# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE MIGUEL WASHINGTON,<br><br>　　　　　　　　　Petitioner,<br><br>vs.<br><br><br>JAMES E. TILTON, Secretary,<br><br>　　　　　　　　　Respondent.[1] | Civil No. 05cv1854-BTM (PCL)<br><br>**ORDER:**<br><br>**(1) ADOPTING IN PART THE FINDINGS AND CONCLUSIONS OF UNITED STATES MAGISTRATE JUDGE;**<br><br>**(2) DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND**<br><br>**(3) DENYING A CERTIFICATE OF APPEALABILITY** |

Petitioner is a California prisoner proceeding pro se and in forma pauperis with a First Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 8.) Presently before the Court is a Report and Recommendation ("R&R") submitted by United States Magistrate Judge Peter C. Lewis, which recommends denying the Petition. (Doc. No. 29.) No objections to the R&R have been filed.

The Court has reviewed the R&R pursuant to 28 U.S.C. § 636(b)(1), which provides that: "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the

---

[1] The Court sua sponte substitutes James E. Tilton, the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), as Respondent in place of former Respondent, Jeanne Woodford, the former Director of the CDCR's predecessor entity California Department of Corrections.

1  court may accept, reject, or modify, in whole or in part, the findings or recommendations made
2  by the magistrate judge." 28 U.S.C. § 636(b)(1).  For the following reasons, the Court adopts
3  in part the findings and conclusions of the Magistrate Judge as set forth below, denies habeas
4  relief, and denies Petitioner a Certificate of Appealability.

5          The Court adopts the description in the R&R of the facts underlying Petitioner's
6  conviction. (R&R at 4-5.)  Briefly summarized, when police responded to a complaint of two
7  people fighting, they encountered Petitioner arguing with his girlfriend.  Petitioner admitted he
8  was carrying a knife under the baggy shirt he was wearing, and the police took the knife without
9  incident.  However, Petitioner fled when the officers attempted to arrest him for carrying a
10 concealed weapon.  He was found on a football field nearby holding two large rocks, where he
11 refused to surrender at gunpoint.  When pepper spray was ineffective, a police dog was sent to
12 bite him.  He hit the dog with the rocks, and was taken into custody after a struggle with several
13 officers.  He kicked a rear window out of its track when he was placed in a police car, and then
14 struggled with several officers as they placed him in four-point restraints.  He was taken to a
15 hospital where he again struggled with the officers.  The assistance of several hospital staff
16 members was required when he was taken from the hospital to jail after he was treated.

17         Petitioner was acquitted of possession of a concealed weapon (count one), convicted of
18 resisting an executive officer[2] by force (count two), and convicted of unlawfully harming or
19 interfering with a police animal (count three).  He claims in the First Amended Petition that he
20 received ineffective assistance of trial counsel, was denied his right to testify by his counsel, and
21 that his request for new counsel was denied. (First Amended Petition "FAP" at 3.)

22 **I.  Ineffective Assistance of Counsel.**

23         Petitioner alleges his trial counsel failed to acquire or attempt to acquire evidence which
24 would have supported his defense and strengthened his claim of innocence. (FAP at 3.)
25 Specifically, he contends the jury did not specify which incident with the police (the initial
26 encounter, on the football field where he was taken into custody, when he was pulled from the

27

28     [2] The jury was instructed that: "The term executive officer includes a police officer." (Lodgment No. 2, Reporter's Tr. at 489.)

police car and placed in restraints, or at the hospital), the jury based their finding that Petitioner used force in resisting the officers, and he believes the jury based their verdict on the events which took place at the hospital. (Id.) He alleges there were video surveillance cameras in the emergency room, and claims that his federal Constitutional right to the effective assistance of counsel was violated by defense counsel's failure to procure video recordings from those cameras, failure to identify and interview the hospital witnesses, and/or failure to obtain medical records relating to his injuries. (Id.)

The Court is required to liberally construe the allegations in the First Amended Petition. Corjasso v. Ayers, 278 F.3d 874, 878 (9th Cir. 2002). In addition, because the state supreme court did not articulate a rationale for the denial of the claim, this Court must conduct an independent review of the record in order to determine whether the state supreme court clearly erred in its application of controlling federal law.[3] Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002); Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir. 2002) ("(W)hile we are not required to defer to a state court's decision when that court gives us nothing to defer to, we must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law.").

The prosecutor argued that the evidence established that Petitioner had used force sufficient to be guilty of the crime of resisting the officers by force (as opposed to resisting without force, a lesser-included offense on which the jury was instructed), during four separate and distinct incidents: the initial encounter with police, on the football field when he was taken into custody, when he was pulled out of the police car and placed in four-point restraints after he had kicked the window off its track, and at the hospital. (Lodgment No. 2, Reporter's Tr. at 502-04.) The jury was instructed, and defense counsel argued, that in order to find Petitioner guilty of resisting the officers by force, they had to be unanimous as to which acts he committed

---

[3] Petitioner presented his ineffective assistance of counsel claim to the state supreme court in a habeas petition, filed while this action was pending, in exactly the same manner as it is presented here. (Lodgment No. 8.) That petition was denied by an order filed on August 23, 2006, which stated in full: "Petition for writ of habeas corpus denied. Corrigan, J., was absent and did not participate." (See http://www.courtinfo.ca.gov (last visited May 30, 2007).) The claim was presented to no other state court.

1  which satisfied the "force" element of the offense. (Id. at 492, 505, 534-35.) Petitioner did not
2  testify at trial, and defense counsel essentially admitted that Petitioner had resisted arrest by
3  fleeing, but argued that the evidence did not support a finding that Petitioner had resisted arrest
4  by force because he never directed force against the officers, but merely struggled to get away
5  from the officers' application of force on him. (Id. at 528-35.) Counsel argued that all of the
6  witnesses were police officers, with the exception of a ride-along passenger who should be
7  considered as having aligned himself with law enforcement, and were therefore biased, and that
8  no one from the hospital had been called to testify because the police did not bother to take down
9  the names of anyone involved in or witnessing the hospital altercation, and those people were
10 the only independent witnesses to any of the events. (Id. at 533-34.) The defense called two
11 witnesses, the woman with whom Petitioner was arguing when first contacted by the police, his
12 girlfriend at the time, and an investigator who had interviewed the ride-along passenger. The
13 investigator testified that the ride-along passenger told him that Petitioner had been compliant
14 for the short time he saw him at the hospital. (Id. at 418.) Petitioner's girlfriend testified that
15 when the officer first tried to handcuff Petitioner, he said "not so rough," broke loose and ran.
16 (Id. at 432-33.) She also witnessed the encounter at the football field just after Petitioner had
17 been subdued, as well as the encounter at the police car, and testified that at no time did she see
18 Petitioner strike, punch or kick any officer. (Id. at 435-41.)

19       Petitioner claims here that the evidence of his behavior at the hospital and his medical
20 records would have supported his defense, and constituted "supporting evidence to strengthen
21 my position of innocents." (FAP at 3.) Liberally construing these allegations, Petitioner is
22 contending that the videotape and eyewitness testimony of his behavior at the hospital would
23 have been exculpatory by showing that he did not use force against the officers during the
24 incident at the hospital. He contends that the jury did not specify in their verdict where he had
25 taken the actions which supported their finding that he was resisting the officers by force, and
26 alleges that the jury relied solely on the events at the hospital. (Id.) Thus, he claims that the
27 videotape and testimony of the hospital witnesses could have exonerated him completely.
28 Additionally, his "defense" constituted an attempt to show that he did not use force against the

officers at any point, by showing that all of the witnesses who testified for the prosecution were biased because they were either police officers or associated with the police, that in any case their testimony merely showed that Petitioner resisted the officers without force, and that the only unbiased witnesses were the hospital employees who did not testify due to the officers' failure to identify them in any police report.

The Magistrate Judge found that Petitioner had failed to demonstrate either deficient performance or prejudice as required by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), because he had failed to state how such evidence would be probative as to whether he resisted the officers or unlawfully harmed a police animal. (R&R at 9.) The Court does not adopt this finding. Under a liberal construction of the First Amended Petition, Petitioner is claiming that the evidence regarding the hospital incident was, as his defense counsel argued, the only objective, non-biased evidence regarding whether he used force in resisting the officers and was necessary to impeach the other witnesses, that it would have exonerated him completely if the verdict was based solely on the hospital incident, and that defense counsel's deficient performance in failing to acquire that evidence prejudiced his defense. The Court will address the merits of this claim in the first instance.

In order to establish prejudice under <u>Strickland</u>, Petitioner must show that counsel's errors were so serious they deprived Petitioner "of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. To satisfy the prejudice prong, Petitioner need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error. <u>Id.</u> at 694 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel can not be shown by a preponderance of the evidence to have determined the outcome."). However, the prejudice inquiry is to be considered in light of the strength of the prosecution's case. <u>Luna v. Cambra</u>, 306 F.3d 954, 966 (9th Cir.), <u>amended</u>, 311 F.3d 928 (9th Cir. 2002).

Here, the evidence that Petitioner used force in resisting the officers was very strong. Five witnesses described the initial encounter between Petitioner and the police as involving a forward thrust by Petitioner to get out of the officer's grasp while the officer was trying to

handcuff him, resulting in the officer falling to the ground as Petitioner twisted out of his grasp and ran away.  (Lodgment No. 2, Reporter's Tr. at 60 (James); at 112-14 (Weber); at 172 (Bucsit); at 211 (Conaway); at 355-58 (Stevens).)  Testimony from seven witnesses established that Petitioner used force against the officers while actively resisting being handcuffed at the football field, where he was fighting with six to eight officers who were attempting to handcuff him after the police dog had been called off.  (Id. at 70-71 (James); at 119 (Weber); at 183-84 (Bucsit); at 263-65, 272-73 (Dafoe); at 275-76 (Hayes); at 300-02 (Buttle); at 379 (Stevens).)  Finally, there was testimony from three witnesses that Petitioner used force when he was removed from the police car after he had kicked a rear passenger window off its track, by struggling and kicking at the officers to avoid being placed in four-point mechanical restraints.  (Id. at 124 (Weber); at 185-86 (Bucsit); at 304-05 (Buttle).)  The testimony of these witnesses satisfied the "force" element of the crime, in that the jury was instructed:

> [T]he words force and violence are synonymous and mean any application of physical force against the person of another, even though it causes no pain or bodily harm or leaves no mark, and even though only the feelings of such person are injured by the act.  [¶]  The slightest touching, if done in an insolent, rude or an angry manner is sufficient.  It is not necessary that the touching be done in actual anger or with actual malice.  It is sufficient if it was unwarranted and unjustifiable.

(Id. at 489-90.)

Although defense counsel argued that these witnesses were biased because they were all police officers or aligned with the police (witness Conaway was the ride-along passenger), the jury obviously did not accept that argument.  Of the two witnesses called by Petitioner, one was an investigator that merely testified that Conaway had told him that he saw Petitioner lying on a gurney at the hospital and he was not struggling at that time.  (Id. at 418.)  The other witness, Petitioner's girlfriend, testified that she did not see Petitioner strike, punch or kick any officer during the initial encounter, at the football field after he had been subdued, or at the police car.  (Id. at 435-41.)  However, as described above, the jury was not required to find that Petitioner struck any officer in order to find that he resisted by use of force.  Moreover, this witness testified that she still loved Petitioner and cared about him (id. at 440), and was therefore shown to have a bias in Petitioner's favor.

Petitioner has not shown that his counsel's failure to identify the witnesses to the hospital encounter, or procure a copy of the videotape from the hospital incident (assuming one existed), or introduce his medical records, created a reasonable probability that the proceedings were rendered unreliable or unfair. The evidence that he resisted the officers through the use of force at the football field and while being placed in four-point mechanical restraints after kicking the window of the police car off its track was very strong. Petitioner's allegations that the jury based its verdict on the hospital incident alone, that the hospital evidence would have shown that he was not resisting by force at the hospital, and that the hospital evidence would have had an impeachment effect on the testimony of the other witnesses, is wholly conclusory, and therefore insufficient to demonstrate he is entitled to habeas relief in this Court. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations that are not supported by specific facts do not merit habeas relief). Moreover, even assuming the evidence would have shown that Petitioner did not resist at the hospital, in light of the strength of the prosecution's case as to the use of force when he was taken into custody on the football field and when he was placed in four-point mechanical restraints, there is no reasonable probability that he suffered prejudice from his counsel's decision not to procure evidence regarding the events at the hospital. Accordingly, based on an independent review of the record, the Court finds that the state supreme court's silent denial of this claim did not involve an unreasonable application of clearly established federal law, and habeas relief is unavailable. Williams v. Taylor, 529 U.S. 362, 405-07 (2000); Strickland, 466 U.S. at 694; Luna, 306 F.3d at 966; James, 24 F.3d at 26.

**II.     Other Claims in the First Amended Petition**

The First Amended Petition also contains references to Petitioner's right to testify and denial of his request for new counsel, stating: "I also made trial Judge aware of my feeling in this regard [regarding defense counsel's failure to acquire the hospital evidence], and was denied to testify by my attorney due to the cumulative testimony by numerous police officers. I asked for a new trial attorney and was denied." (FAP at 3.) In the Answer, Respondent addressed the right to testify aspect of this claim. (Doc. No. 27-2 at 13-15.) The Magistrate Judge declined to address the right to testify claim, finding that an "inspection of the Petition fails to reveal any

1  such claim made by Petitioner." (R&R at 10 n.4.) The Court does not adopt that finding. The
2  R&R is silent regarding the claim alleging denial of Petitioner's request for new counsel, and
3  the Court will address both claims in the first instance.
4      These claims were presented to the state supreme court in a habeas petition filed while
5  this action was pending, in the exact manner they are presented here. (Lodgment No. 8 at 3.)
6  As set forth above, the state habeas petition was denied without a statement of reasoning, and
7  this Court is required to conduct an independent review of the record in order to determine
8  whether the state court clearly erred in its application of controlling federal law. Pirtle, 313 F.3d
9  at 1160; Greene, 288 F.3d at 1089.
10     The claim that Petitioner "asked for a new trial attorney and was denied" (FAP at 3), is
11  without merit. Petitioner brought a Marsden[4] motion seeking substitution of counsel, which was
12  heard and denied the day before trial began. (Lodgment No. 2, Reporter's Tr. at 3.)  It is well
13  established that the Sixth Amendment requires an appropriate inquiry into the grounds for a
14  Marsden motion. Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); Hudson v.
15  Rushen, 686 F.2d 826, 829 (9th Cir. 1982) ("The trial court must take the time to conduct such
16  necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern.")
17  However, "The [Sixth] 'Amendment guarantees defendants in criminal cases the right to
18  adequate representation, but those who do not have the means to hire their own lawyers have no
19  cognizable complaint so long as they are adequately represented by attorneys appointed by the
20  courts.'" Schell, 218 F.3d at 1025-26, quoting Caplin & Drysdale, Chartered v. United States,
21  491 U.S. 617, 624 (1989).
22     Although the record here does not contain a transcript of the Marsden hearing, Petitioner
23  does not allege why the hearing was insufficient to protect his right to adequate representation.
24  To the extent he contends he was not represented by competent counsel for the reasons set forth
25  in his ineffective assistance claim, his contention is without merit for the reasons discussed

---

[4] People v. Marsden, 2 Cal.3d 118 (1970). The Court in Marsden held that a defendant represented by appointed counsel or the public defender may request that the court discharge the attorney and substitute new counsel if the defendant's right to counsel would be substantially impaired by continuing with the original attorney. Id. at 123.

1 above.  Accordingly, he has failed to demonstrate that the state supreme court clearly erred in
2 its application of controlling federal law.  Pirtle, 313 F.3d at 1160; Greene, 288 F.3d at 1089;
3 Schell, 218 F.3d at 1025-26.  Moreover, the lack of any specific allegations in support of the
4 claim in this Court precludes granting habeas relief.  James, 24 F.3d at 26.

5       The claim that Petitioner was deprived of his right to testify based on the advice of his
6 attorney is also without merit.  There are no allegations supporting this claim whatsoever either
7 here or in the state supreme court.  (FAP at 3; Lodgment No. 8 at 3.)  Petitioner has therefore
8 failed to demonstrate that the state supreme court clearly erred in its application of controlling
9 federal law.  See Strickland, 466 U.S. at 694 (requiring a defendant to *demonstrate* that counsel
10 was deficient and that the defendant was prejudiced as a result of the deficient performance);
11 Pirtle, 313 F.3d at 1160; Greene, 288 F.3d at 1089.  Furthermore, because this claim is entirely
12 conclusory, habeas relief is unavailable in this Court.  James, 24 F.3d at 26.

13 **III.    Claims in the Original Petition**

14       There are no remaining claims in the First Amended Petition.  However, the Magistrate
15 Judge addressed two claims which were presented in the original Petition filed in this action.
16 (R&R at 9-11.)  These include a claim of ineffective assistance of counsel due to counsel's
17 failure to object to statements made by the prosecutor during closing argument, and a claim
18 alleging the prosecutor withheld evidence.  (Pet. at 5-6.)

19       These two claims were presented in the original Petition, along with the ineffective
20 assistance of counsel claim addressed above.  However, Petitioner failed to allege exhaustion
21 of state court remedies with respect to any of the claims in the original Petition, and the Petition
22 was dismissed without prejudice on that basis. (Doc. No. 3.)  In response to the dismissal Order,
23 Petitioner filed a habeas petition in the state supreme court presenting the same claims as are
24 presented in the First Amended Petition.  (Lodgment No. 8.)  After being granted an extension
25 of time to file an amended petition in this Court, Petitioner filed the First Amended Petition
26 containing only the claims addressed above.  (Doc. No. 8.)  Respondent moved to dismiss the
27 First Amended Petition on the grounds that the claims were unexhausted because the state
28 supreme court had not yet ruled on the habeas petition in which they were presented.  (Doc. No.

10.) The state supreme court denied the habeas petition while the motion to dismiss was pending, rendering the claims exhausted, and this Court denied the motion to dismiss and directed Respondent to file an Answer. (Doc. No. 24.)

The First Amended Petition superceded the original Petition and became the operative pleading in this action upon filing. See London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981) ("A plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint.") Thus, the claims presented in the original Petition which were not presented in the First Amended Petition have been abandoned by Petitioner and are not properly before the Court. Even were the Court to address them, they are without merit for the reasons set forth in the R&R. (See R&R at 9-11.) Thus, to the extent these claims are properly before the Court, the Court adopts the findings and conclusions of the Magistrate Judge regarding these claims, and denies habeas relief for the reasons set forth in the R&R.

**IV.   Conclusion and Order**

The Court **ADOPTS IN PART** the findings and conclusions of the Magistrate Judge as set forth in this Order. The Court **DENIES** the First Amended Petition for writ of habeas corpus. The Court **DENIES** Petitioner a Certificate of Appealability as to any claim presented in the First Amended Petition. See Lambright v. Stewart, 220 F.3d 1022, 1024-25 (9th Cir. 2000) (providing that threshold "substantial showing of the denial of a constitutional right," is met by demonstrating that: (1) the issues are debatable among jurists of reason; or (2) that a court could resolve the issues in a different manner; or (3) that the questions are adequate to deserve encouragement to proceed further).

The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: June 4, 2007

_Barry Ted Moskowitz_
Hon. Barry Ted Moskowitz
United States District Judge